COMMONWEALTH vs. KENNETH ADAMS.

Plymouth. January 4, 1983. — May 18, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional
rights. *Evidence,* Admissions and confessions. *Due Process of Law,*
Vagueness of statute. *Practice, Criminal,* "Two-tier" court system,
Disqualification of judge. *Statute,* Construction.

At a criminal trial it was error to admit in evidence certain statements
made by the defendant to a police officer, where the police officer, in
advising the defendant of his rights, had failed to inform him that any
statements made by the defendant could be used against him in court.
[267-269]
The defendant's failure in a criminal case to file a motion to suppress cer-
tain statements made by him to a police officer did not bar him from
making a seasonable objection to the admission of the statements in
evidence. [269-270]
The open and gross lewdness provision of G. L. c. 272, § 16, was not
unconstitutionally vague as applied to a defendant charged with a
violation of the statute for driving slowly on a public street while
masturbating. [270-272]
General Laws c. 218, § 27A, did not require a District Court judge pre-
siding at a jury-waived criminal trial to disqualify himself because he
had earlier heard the defendant's motion to dismiss the complaint.
[272-274]

COMPLAINT received and sworn to in the Brockton Divi-
sion of the District Court Department on May 28, 1980.

The case was heard in the Fourth Plymouth Division by
*Collari,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Jane Larmon White* for the defendant.

*Robert S. Sinsheimer,* Assistant District Attorney, for the Commonwealth.

LYNCH, J.  After choosing a jury trial in the first instance and then waiving his right to a jury trial, Kenneth Adams was convicted in the Wareham District Court jury of six session of open and gross lewdness and lascivious behavior under G. L. c. 272, § 16.  The Appeals Court granted a stay of execution of sentence pending appeal.  We transferred the appeal to this court on our own motion.  We now reverse the defendant's conviction because we conclude that several inculpatory statements made by the defendant were admitted in evidence without a showing that the defendant was fully advised of his Miranda rights and that, consequently, a finding could not have been made that the defendant knowingly, intelligently, and voluntarily waived these rights.

There was evidence from which the following facts could be found.  On May 27, 1980, at approximately 7:15 P.M., Frank Wisnewski was walking with his daughter on West Haven Drive in Brockton.  A blue Dodge Dart automobile passed them travelling in the opposite direction.  A few minutes later the same automobile passed by them travelling towards them, slowing down as it approached.  During this time Wisnewski was able to see into the car, and he saw the defendant "playing with his penis."

Wisnewski returned to his home and informed his neighbor State Police Corporal Galen Worcester of the incident.  After speaking with Wisnewski, Corporal Worcester got into his police cruiser and drove in the direction the defendant had been travelling.  Meanwhile, Wisnewski telephoned the Brockton police.  After driving for approximately five minutes, Corporal Worcester came upon the defendant's vehicle.  Corporal Worcester sounded his police siren and within one-quarter to one-half of a mile, the defendant stopped his vehicle by the side of the road.  Corporal Worcester alighted from his cruiser, approached the defendant's automobile, and asked the defendant for his driver's license and registration.  Worcester noticed that the

defendant's pants were unzipped and that several pillows were beside the defendant on the front seat. From his observations while following the defendant's automobile, Worcester inferred that the defendant had been sitting on these pillows prior to being stopped.

The defendant asked Corporal Worcester the reason for the stop and Worcester responded that the defendant had been seen masturbating in Brockton. Almost immediately after stopping the defendant, Worcester was joined by Brockton police officers, John Butler and Dominic Persampierri, who were accompanied by Frank Wisnewski. Officer Butler placed the defendant under arrest, put him in the cruiser, and took him to the Brockton police station.

1. At the defendant's trial Officer Butler testified as to the events immediately preceding and following the defendant's arrest. Butler stated that on arriving at the scene he advised Adams "of his rights" and then arrested him. Butler testified at trial that while transporting Adams to the police station he had a conversation with Adams. The prosecutor asked Butler what he said to Adams. The defendant's lawyer objected at this point. He argued that no proper foundation had been established for this testimony because Butler had neither testified as to the Miranda warnings he administered to Adams, nor to whether Adams had waived these rights prior to making any statement. The judge directed Butler to recite the rights he had given Adams. Butler testified that he informed the defendant that he had the right to remain silent, the right to stop the questioning at any time, the right to consult with an attorney whom the Commonwealth would provide for him if he could not afford to pay for one, and the right to make one telephone call. The officer testified that he advised the defendant of his rights from memory rather than using a Miranda card. On further questioning from the prosecutor the officer stated that these were all the rights he administered to the defendant.

Following this recitation, the prosecutor asked Butler what the defendant said to him. The defendant's counsel

again objected arguing that the statements should not be admitted because the police officer's testimony revealed that he had not told the defendant that any statement he made could be used against him. Additionally, the defense counsel argued that the Commonwealth had still not made a showing that the defendant had knowingly, intelligently, and voluntarily waived his rights prior to making these statements. The judge made no explicit finding that the defendant waived his rights nor that the defendant received all the required Miranda warnings. He did not hold a voir dire hearing on these issues. He permitted Butler to testify, however, as to his conversation with the defendant over the defense counsel's objection. Butler stated that Adams admitted to him that he had his penis out at the time of the incident. Butler further testified that Adams said that he did not think there was anything wrong with such conduct and that he did it all the time.

The defendant now renews his argument that admission of his statements in evidence violated the dictates of *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and was clear error. We agree. In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. In delineating these procedural safeguards the Court stated that "the following measures are *required*. Prior to any questioning, the person must be warned that he has the right to remain silent, *that any statement he does make may be used as evidence against him,* and that he has a right to the presence of an attorney, either retained or appointed" (emphasis added). *Id.* The defendant may waive these rights, provided that the waiver is made voluntarily, knowingly, and intelligently but "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.* at 479.

In this case, the Commonwealth did not demonstrate that the defendant was fully advised of his rights. Officer Butler's testimony did not show that he had advised the defendant that any statements he made could be used against him. The Commonwealth now argues that there is no absolute requirement that an officer must inform a defendant that his statements may be used against him. This is a clear misstatement of the law. In *Miranda* the Supreme Court held that: "The warning of the right to remain silent *must* be accompanied by the explanation that anything said can and will be used against the individual in court" (emphasis added). *Miranda, supra* at 469. This warning "is an absolute prerequisite to interrogation." *Id.* at 471. The Court explained that: "This warning is needed in order to make [the accused] aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege." *Id.* at 469. Our cases have recognized the mandatory nature of this warning. In *Commonwealth v. Dustin*, 373 Mass. 612 (1977), we upheld an order suppressing a statement made by a defendant because the officer speaking with the defendant implied that any statement the defendant made could not be used against him. We noted there that: "This was directly contrary to the required Miranda warning that anything the defendant said could and would be used against him in court." *Id.* at 615. Thus, since the prosecutor in this case did not "demonstrat[e] . . . at trial" that the defendant was given his full Miranda warnings, the defendant's statements should not have been admitted in evidence against him. *Miranda, supra* at 479.

The Commonwealth also argues that the defendant is barred from challenging the admission of his statements because he failed to file a motion to suppress the statements. However, the Commonwealth has confused the motion to suppress with the admission of the statements in evidence. Even if the defendant has not moved to suppress his statements the burden is still on the Commonwealth, upon sea-

sonable objection, to prove affirmatively, prior to the admission of these statements, that the statements were properly obtained and that the defendant waived his rights. *Id.*[1] The Commonwealth offered no evidence on this issue. Since the record demonstrates that the defendant was not advised of all of the required Miranda warnings, the statements must be suppressed since no valid waiver could be obtained of rights that were not explained completely. The defendant, therefore, must be afforded a new trial. See *Commonwealth* v. *Tavares,* 385 Mass. 140, 145 (1982), quoting *Coyote* v. *United States,* 380 F.2d 305, 309-310 (10th Cir.), cert. denied, 389 U.S. 992 (1967) ("[I]f [the *Miranda*] prerequisites have not been fully met, the confession is without more involuntary as a matter of law, hence inadmissible and insubmissible").

2. The defendant also appeals from the judge's denial of his motion to dismiss the complaint charging him with "open and gross lewdness and lascivious behavior" under G. L. c. 272, § 16, on the ground that the statute is unconstitutionally vague. Several general principles govern our determination as to whether a challenged statute is unconstitutionally vague. Criminal statutes must be sufficiently specific so as to give fair notice as to what conduct is forbidden. *Rose* v. *Locke,* 423 U.S. 48, 49-50 (1975). "An essential principle of due process is that a statute may not proscribe conduct 'in terms so vague that men of common intelligence must necessarily guess at its meaning.'" *Commonwealth* v. *Sefranka,* 382 Mass. 108, 110 (1980), quoting *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926). However, "if the language which is challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices, it is constitutionally adequate." *Commonwealth* v. *Jarrett,* 359

---

[1] In most cases it is preferable for a defendant to file a pretrial motion to suppress evidence. See Mass. R. Crim. P. 13(c) (2), 378 Mass. 873 (1979). Here, noncompliance can be excused because it is not clear that the defendant was aware of the failure of the police to give the full Miranda warnings.

Mass. 491, 496-497 (1971). See *Commonwealth* v. *Gallant*, 373 Mass. 577, 589 (1977). In evaluating a statute which does not implicate First Amendment freedoms it is a well established principle that vagueness challenges must be evaluated in light of the facts of the case at hand. *United States* v. *Powell*, 423 U.S. 87, 92 (1975). *United States* v. *Mazurie*, 419 U.S. 544, 550 (1975).

Here the defendant was arrested after a private citizen complained that he saw the defendant drive by slowly in his automobile on a public way with his penis exposed and masturbating. We believe that this conduct, if proved, would be included under the commonly understood meaning of "open and gross lewdness and lascivious behavior" so as to give the defendant fair warning that his conduct is proscribed.

Moreover, where a statute has been clarified by judicial explanation or by application to particular conduct the statute will withstand a challenge that it is unconstitutionally vague. *Rose* v. *Locke, supra* at 50-52. *Robinson* v. *Berman*, 594 F.2d 1, 2 (1st Cir. 1979). We have on several occasions reviewed convictions under G. L. c. 272, § 16, based on conduct similar to that presented here. As we observed in *Commonwealth* v. *Sefranka, supra* at 116: "The 'open and gross lewdness' provision [of § 16] has been said to be 'closely similar' to the offense of indecent exposure, *Commonwealth* v. *Broadland*, 315 Mass. 20, 22 (1943), and has been applied primarily to indecent exposure in front of, and sexual conduct with, children. See *Commonwealth* v. *Templeman*, 376 Mass. 533, 537-538 (1978)." In *Commonwealth* v. *Broadland, supra,* the defendant was charged with the common law offense of indecent exposure. We noted that the defendant's conduct of exposing himself in a public place "would have [clearly] warranted a verdict of guilty of the statutory offence of 'open and gross lewdness and lascivious behavior,' G. L. (Ter. Ed.) c. 272, § 16 . . . if the statutory offence had been charged." *Id.* at 22. Similarly, in *Commonwealth* v. *Cummings*, 273 Mass. 229 (1930), we upheld the defendant's conviction under § 16 where the defendant in a public place "intentionally ex-

posed his person to his companion and submitted to the indecencies . . . [knowing] that the exposure of his person might become visible at any moment . . . ." *Id.* at 231.

Additionally, in *Commonwealth* v. *Wardell*, 128 Mass. 52, 54 (1880), this court, in construing Gen. Sts. (1860) c. 165, § 6, now G. L. c. 272, § 16, explained that the "word 'lewdness' at common law mean[t] open and public indecency; but as used and qualified in the statute it has a broader sense . . . . The offence created does not depend on the number present. It is enough if it be an intentional act of lewd exposure, offensive to one or more persons present." The court held that the defendant's act of "intentional exposure of his person . . . [in public] was such open and gross lewdness and lascivious behavior as it was intended by the provisions of the statute to punish." *Id.* More recently, in *Commonwealth* v. *Dickinson*, 348 Mass. 767 (1964), this court affirmed a conviction under § 16 based on facts similar to those presented here. A bystander had observed the defendant in his car "naked from the waist down with his left hand 'between his legs on his private.' 'The complainant observed his private organ.'" *Id.* at 767-768. We rejected the defendant's contention that his conduct was not "open" within the statutory definition.

These several cases which involved prosecutions under § 16 for conduct involving indecent exposure provided the defendant with adequate notice that his alleged conduct was prohibited under this statute. The act of masturbating in a public place certainly falls within the common understanding of "open and gross lewdness and lascivious behavior." Accordingly, without considering other conduct not presented to us in this case, we conclude that the statute is not unconstitutionally vague as applied to this defendant. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974).

3. After both sides had argued the defendant's motion to dismiss the complaint on the ground of unconstitutional vagueness, the defendant waived his right to a jury trial even though he had originally elected to have a jury trial in the first instance. When the motion to dismiss was denied,

the defendant moved for the judge to recuse himself from sitting at the jury-waived trial. No evidence was taken during the hearing on the motion to dismiss. The judge denied the motion and the defendant proceeded to trial without objection. The facts stated by counsel during argument on the motion to dismiss were largely uncontroverted. The defendant's counsel based his motion for recusal on G. L. c. 218, § 27A, which regulates appeals to the jury-of-six sessions.[2] The defendant relies on that part of G. L. c. 218, § 27A (d), as amended by St. 1979, c. 344, § 3, which states, "No justice so sitting shall act in a case in which he has sat or held an inquest or otherwise taken part in any proceeding therein." The defendant argues that since this judge had heard and decided the motion to dismiss, and thus taken part in a proceeding, the judge was required to recuse himself.

We disagree. The defendant's argument falls on the basic principle of statutory construction that a statute must be read as a whole and consistently with the legislative intent. A "literal construction will not be adopted when that construction would be inconsistent with other material provisions of the statute and would defeat the aim and object of the legislation." *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979). See *Boston* v. *Massachusetts Bay Transp. Auth.*, 373 Mass. 819, 823 (1977). The first sentence of G. L. c. 218, § 27A (d), states that: "The justice presiding over a jury-of-six session shall have and exercise all the powers and duties which a justice sitting in the superior court department has and may exercise in the trial and disposition of criminal cases including the power to report questions of law to the appeals court, but in no case may he impose a sentence to the state prison." The power of Superior Court judges to sit at trial where they have not

[2] Although the defendant originally chose a jury trial in the first instance under the provisions of G. L. c. 218, § 26A, inserted by St. 1978, c. 478, § 188, the relevant procedures are the same. Section 26A provides in pertinent part that: "[T]rials by jury in the first instance shall be in those jury sessions designated by said section twenty-seven A for the hearing of such appeals. All provisions of law and rules of court relative to the hearing and trial of such appeals shall apply also to jury trials in the first instance."

found facts but have previously heard substantive and procedural motions has long been recognized. See *Commonwealth* v. *Coyne,* 372 Mass. 599, 601-604 (1977). If we assume that § 27A (*d*) applies, reading the statute as a whole, we conclude that the statute's purpose is to prevent a defendant who elects a de novo appeal from his bench trial from appearing before the same judge who took part in the defendant's case at the bench trial session. In this case, there was no bench trial session. The defendant chose a jury trial in the first instance under the provisions of G. L. c. 218, § 26A, and decided not to be tried under the two-tier trial system wherein a defendant can waive his right to a jury trial in the first instance, elect instead to have a bench trial first, and preserve his right to a jury trial if he is dissatisfied with the result of the bench trial. See *Lyon* v. *Commonwealth,* 381 Mass. 356 (1980). After making his initial decision not to be tried under the two-tier trial system, but rather to have his jury trial in the first instance, the defendant decided to waive completely his right to a jury trial. Since the protective provisions of § 27A (*d*) are relevant only when a defendant originally chooses a bench trial and subsequently files for trial de novo in the jury of six session, the section is not applicable in this case. The judge here who sat only on this single proceeding properly declined to recuse himself.

*Judgment reversed.*

*Finding set aside.*